[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed for a dissolution of her marriage with the defendant. The court heard testimony over the course of three days of trial. Based upon the evidence presented, the court makes me following findings and issues the following orders.
The plaintiff and the defendant married on October 22, 1976. The plaintiff has continuously resided in the State of Connecticut for at least twelve months prior to bringing this action. The marriage has broken down irretrievably. There are two minor children born as a result of the marriage, Shawn Dwyer, born on February 23, 1983 and Melissa Dwyer, born February 23, 1985.
The parties have previously resolved the issues of custody and visitation. They have joint legal custody of the two children, with primary physical custody of Melissa with the plaintiff and primary physical custody of Shawn with the CT Page 2961-H defendant.
The plaintiff is forty years old. The plaintiff has a herniated disc in her back as well as other ailments. She was previously employed at Bic Corporation and at the Fellowship House. She has been unemployed since October, 1993 due to an injury. The plaintiff currently receives Social Security Disability income for herself and her two children.
The defendant is forty-five years old. For eighteen years the defendant worked for Star Distributors delivering beer. While employed at Star Distributors, he was a member of the Teamsters Union. In 1995, the union reached an impasse with the employer during collective bargaining. On February 1, 1995, the employees of Star Distributors, including the defendant, went out on strike. The strike continues to this day.
The defendant did not work from February 1995 until he obtained part-time, employment at a gas station in August of 1995. In December, the defendant acquired full-time work with the Town of Guilford. He is presently employed by the Town of Guilford performing general road maintenance.
The parties provided the court with conflicting views of the reasons for the marital breakdown. The plaintiff testified that the defendant verbally and mentally abused her throughout the course of their marriage. She also stated that she realized the marriage had broken down when the defendant failed to support her during her recovery from her back injury.
The defendant testified that their marriage was destroyed by the meddling of the plaintiff's mother and the degrading and demeaning comments made publicly and privately about him by the plaintiff.
The court does not find either party to be wholly credible in their testimony concerning the causes of the marital breakdown. The marriage was not an idyllic one and both sides share responsibility for the quality of their relationship and its resulting dissolution.
The plaintiff s sole source of income at the present time is $686 monthly in social security disability benefits. She also receives $171 each month in social security benefits for each of her children. As a result, her total monthly income is $1,028. CT Page 2961-I
The defendant presently receives a net base pay of $287 weekly. During the past winter, he also received gross overtime pay in the amount of $2,666. Overtime is primarily offered for snow removal during the winter months. Therefore, the defendant's weekly overtime pay is $51 gross and $38 net. The court finds the defendant's total net weekly pay to be $325.
The parties jointly own three properties: their current home at 15 Duck Hole Road, Guilford, their former home at 165 Sperry Drive, Guilford, and real estate at 257 Brown Street, West Haven. In addition, the plaintiff holds an ownership interest with her sister in real estate presently occupied by her mother at 57 Spruce Street, Milford.
The parties' joint bank accounts have been depleted as a result of the strike at the defendant's former employer, Star Distributor. The funds were used to pay ongoing household expenses.
Prior to the initiation of the dissolution action, the plaintiff had a savings account in her name only with a balance of approximately $28,000. In the three months immediately preceding her filing of this action, the plaintiff withdrew all but $2,000 of these funds. The money was withdrawn in an effort to insure that the defendant did not gain access to it through the dissolution proceedings.
The funds were used by the plaintiff in the following ways: $5,000 to purchase savings bonds in the name of the plaintiff and her daughter, $5,000 to purchase savings bonds in the name of the plaintiff and her son, $5,000 to purchase a certificate of deposit in the name of her daughter with the plaintiff initially as custodian, and subsequently changed to the plaintiff's sister as custodian, and $5,000 to purchase a certificate of deposit in the name of her son with the plaintiff as custodian. The certificate of deposit in her son's name was subsequently redeemed by the plaintiff. The plaintiff testified that she spent the money from the redeemed certificate of deposit and the remaining funds on unspecified expenses.
The plaintiff claims that her interest in the Spruce Street property and the proceeds of her Guilford Savings Bank account should not be considered part of the marital estate. She asserts that the Spruce Street property was her parents' home and the CT Page 2961-J defendant contributed nothing toward its acquisition. She also asserts that the funds in the bank resulted from her employment and were always kept separate from me the defendant.
This court does not agree that it should disregard these assets when making its awards in this case. Pursuant to Conn. General Statute § 46b-81 (a), the court may assign to either party all or any part of the estate of the other. In fixing the nature and value of the property, if any, to be assigned, the court shall consider the factors enumerated in § 46b-81 (c), including the contributions of each of the parties in the acquisition preservation, or appreciation in value of their respective estates.
It was the contributions of the plaintiff through funds from her employment that led to the initial acquisition of the account held at the Guilford Savings Bank. It was contributions of the defendant that allowed the account to be preserved and to appreciate. Funds from his employment went to pay for ongoing household expenses and enabled the bank account to remain untouched and to grow.
The court does agree with the plaintiff that the bank accounts held at various banks in her name and that of her mother should not be viewed as part of the marital estate and considered for assignment to the defendant. The plaintiff's name was placed on these accounts by her mother only to help her administer the accounts. Neither the plaintiff nor the defendant contributed in any way toward the acquisition, preservation or appreciation of these accounts.
The plaintiff is also the owner of two life insurance policies from Phoenix Mutual. One policy is in the amount of $50,000 and has a cash value of $2,000. The other policy is in the amount of $100,000 and has a cash value of $16,500. The funds used to pay the premiums for the policies came from the parties' joint bank accounts. The plaintiff subsequently obtained a loan against the cash value of her $100,000 policy.
The defendant previously filed three motions for contempt. In his motion for contempt filed September 26, 1995, the defendant asserted that the plaintiff violated the court's order of September 19, 1995 restraining the parties from transferring, assigning, incumbering, or otherwise disposing of any assets to which he or she had an interest of any kind while the litigation CT Page 2961-K was pending. In his motion, the defendant specifically alleges that the plaintiff transferred to her attorney a portion of the proceeds from a loan against life insurance.
In his motions for contempt filed on February 27, 1996 and March 13, 1996, the defendant alleges that the plaintiff failed to deposit her income into the joint checking account as required by the court's order of September 21, 1995.
The court finds that the plaintiff willfully failed to comply with the court's orders. She failed to abide by the court's order of September 19 restraining the transfer of assets by giving her attorney a check in the amount of $2,194.36 on September 20, 1995 from the proceeds of a loan she obtained against her life insurance policy. In the proceedings before the court on September 19th, the parties specifically stated on the record that the loan was included in the court's order prohibiting the transfer of assets.
The plaintiff also violated the court's order of September 21, 1995. She failed to deposit her income into the joint checking account in February and March 1996 as required by the court's order. Her failure in this regard was particularly damaging to the defendant because it deprived him of the income he expected and needed to pay monthly household expenses.
At the conclusion of the dissolution trial on March 26, 1996, the court gave the defendant partial relief for the plaintiff's contemptuous conduct. The plaintiff was ordered to pay for the cost necessary to restore water to the marital home, up to a maximum of $500. The funds needed to pay for this repair were to come from the proceeds of the loan against the plaintiff s life insurance policy currently being held at the Guilford Savings Bank.
The plaintiff is also hereby ordered to pay $1,000 toward the defendant's attorneys fees as additional relief for her failure to abide by the court's orders. The defendant was forced to pursue three motions for contempt and incur additional attorney's fees because of the plaintiff's contemptuous conduct.
In determining the orders contained herein, I have carefully considered all the statutory criteria contained in Conn. General Statutes § 46b-81 as they relate to the assignment of property, § 46b-82 as they relate to the award of alimony, CT Page 2961-L and § 46b-84 and the child support guidelines as they relate to the award of child support. The court enters the following orders:
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. The defendant shall pay the plaintiff $23 each week as child support for the minor child Melissa. This amount is in accordance with the child support guidelines. The parties provided the court with insufficient information to determine whether the social security check currently received by the plaintiff for Shawn could be transferred to the defendant in light of the fact that he will have primary physical custody of Shawn. The court's order assumes that the plaintiff will continue to receive the social security disability checks for both of the minor children.
3. The defendant shall pay the plaintiff $20 each week as periodic alimony. Alimony shall terminate upon the death of either party, the plaintiff's remarriage or cohabitation by the plaintiff pursuant to Conn. General Statute § 46b-86 (b).
4. The plaintiff shall be the sole owner of the 1991 Dodge van and the defendant shall be the sole owner of the 1992 Dodge truck. Each of the parties shall be solely responsible for paying the auto loans for their respective vehicles and hold the other harmless with respect to such loans.
5. The personal property of the parties shall be divided equally between them. The Family Relations Office shall be used to mediate any dispute over the allocation of specific items of personal property. To the extent the parties cannot reach agreement on the distribution of personal property after mediation by Family Relations, a tag sale shall be held with the proceeds of the sale to be evenly divided by the parties.
6. Each of the parties shall be solely responsible for payment of the liabilities listed on their respective financial affidavits, except that the liabilities for real estate taxes and past due utilities shall be shared equally and be paid from the proceeds of sale of the property.
7. The defendant shall provide medical insurance for the minor children to the extent it is provided through his place of CT Page 2961-M employment. The plaintiff and the defendant shall share equally the cost of any unreimbursed medical expenses.
8. The plaintiff shall receive one-half of any back wages awarded the defendant for the Period from February 1, 1995 through the date of this decision as a result of the settlement of the strike at Star Distributors.
9. The plaintiff is not awarded any interest in the personal injury claim presently being pursued by the defendant.
10. The plaintiff is awarded one-half the current value of the defendant's pension through the Teamster's Union. The plaintiff shall draft a qualified domestic relations order (QDRO) to effectuate this award. The draft shall be submitted to the defendant and the plan administrator for their review and to the court for its approval.
11. The defendant is not awarded any interest in the plaintiff's pension from BIC Corporation.
12. The real property at 15 Duck Hole Road, Guilford, at 165 Sperry Drive, Guilford, and at 257 Brown Street, West Haven shall be immediately placed on the market and sold. The net proceeds from the sale of the properties shall be divided equally between the plaintiff and the defendant. Net proceeds are defined as the funds remaining after payment of any mortgages and liens and the usual and customary costs associated with the sale. The defendant shall have exclusive possession of the property at 15 Duck Hole Road until it is sold. The defendant shall also be responsible for paying the following costs of the property from the date of this decision until the property is sold: mortgage principal, interest and taxes and costs of repair not exceeding $200.
The defendant shall be responsible for managing the rental properties at 165 Sperry Drive, Guilford, and 257 Brown Street, West Haven, until the properties are sold. He shall collect the rent and pay reasonable and necessary expenses associated with the property. He shall maintain a written account of the income received and expenses paid. Any income received in excess of expenses paid shall be split equally between the parties at the time of the sale of the property.
13. The defendant is not awarded any interest in the property at 57 Spruce Street, Milford. CT Page 2961-N
14. The plaintiff and the defendant shall each receive one-half of the proceeds from the original $16,500 loan against the plaintiff's life insurance proceeds. The cost of the repair of the water problem at 15 Duck Hole Road ordered by the court on March 26, 1996 shall be deducted from the plaintiff's share of these proceeds.
15. The plaintiff shall retain possession of the $10,000 savings bond in the name of her daughter. The defendant shall be given the $10,000 savings bond in the name of his son. The parties shall split equally the $5,000 certificate of deposit in the name of their daughter and the $1,400 balance in the savings account at Guilford Savings Bank.
Jon M. Alander, Judge